Paul J. Keller and Arthur E. Inglesh, Trustees, Appellees, v. James S. Rodie, Individually and Trustee of Longwood Trust et al., Defendants. W. Allan Wood, Appellant.

Gen. No. 10,023.

38

court at the February term, 1945.    Heard in this Opinion filed May 28, 1945. Released for publication June 18, 1945.

ADAMS, MOSES & CULVER, of Chicago, and KRUSE-MARK & KRUSEMARK, of Joliet, for appellant.

CHARLES H. BLIM, of Joliet, for appellees.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This cause is here by an appeal from an interlocutory *ex parte* order of the circuit court of Will county, entered on October 9, 1944, appointing a receiver for the mortgaged premises in a foreclosure suit, on the same day the complaint was filed.

Counsel for appellant, as such, filed a petition to remove the receiver, and the defendants filed a motion to dismiss the complaint. Appellee Keller filed a motion to strike the petition of appellant's counsel, and later appellant Wood filed a motion to vacate the order appointing the receiver, adopting the prior petition of his counsel. The latter motion was filed on December 2, 1944, and a hearing was had on that day. At the close of the hearing the court stated: "Show for your minutes: Proofs heard and closed and motions to vacate denied and motion to strike denied. Receivership continued with qualifications set forth in

order. See order." The record shows a signed order of the court entitled: "Order of December 2nd, 1944," under a *placita* of and purporting to be entered on that date. While it is somewhat confused as to the character of the matters presented on the hearing, it orders only: "That the motions to discharge the receiver and the motion to strike the motion to discharge the receiver are denied," and continues the receivership with qualifications. The order does not pass upon appellant's motion to vacate the order appointing the receiver, and no such order has been entered. Under Supreme Court Rule 31 (Ill. Rev. Stat. 1943, ch. 110, par. 259.31 [Jones Ill. Stats. Ann. 105.31]), providing for an appeal from an interlocutory *ex parte* order if the court does not act upon the motion to vacate the same within seven days after its presentation, the appeal was properly prosecuted from the order appointing the receiver.

The indebtedness secured by the trust deed in controversy is evidenced by 15 promissory notes for the principal sum of $17,500, 14 of them for $750 each due semiannually, beginning November 1, 1941, and one note for $7,000 due November 1, 1948, with semiannual coupon interest notes. The notes, payable to bearer, and the trust deed to Arthur E. Inglesh, as trustee, all dated November 1, 1938, were executed by James S. Brodie, as trustee of Longwood trust. The trust deed conveys approximately 212 acres of land in Will county, adjacent to the State line between Illinois and Indiana, and known as Longwood Country Club. It was conveyed to appellant W. Allan Wood on March 31, 1942, by the successor trustee of Longwood trust, and was formerly used as a golf club, but not within about three years next prior to the filing of the foreclosure suit. Appellee Paul J. Keller lives in Indiana on the adjoining property. The trust deed provides, in case of any default in payment of principal or interest, for acceleration of the maturity of the principal

sum and immediate foreclosure, at the option of the holder of the principal notes; and that upon the filing of any bill for foreclosure, for the immediate appointment of a receiver without notice, with power to immediately enter and collect the rents, issues and profits.

The complaint for foreclosure, which is sworn to by appellee Keller, alleges his ownership of all the principal notes and of coupon interest notes numbers 8 to 20, the prior coupon notes having been paid; that $150 had been paid on coupon note No. 8 on December 1, 1942; that the first six principal notes and coupon notes 8 to 11 were in default, and that he had elected to declare all of principal notes and coupon notes due; that the premises were improved for a golf course and certain buildings, including a clubhouse; that the buildings were unoccupied except as golfers were in them in the day time, and that plaintiffs fear that in case of loss by fire or otherwise they will be unable to collect the insurance thereon; that the fixtures are covered by the trust deed, and that certain agents or employees of the defendants have carried away some of them, and that plaintiffs fear that other fixtures will be carried away; that the premises are scant security for the indebtedness, costs and expenses; that the mortgagor has not applied the rents to the indebtedness, and if the premises cannot be sold for an amount sufficient to pay the debt, costs and expenses, a personal decree against the mortgagor and the present owner would be unavailing. The complaint concludes with a prayer for foreclosure and the appointment of a receiver. The abstract does not show that any answer to the complaint was filed.

All the defendants entered their general appearance, and in their motion to dismiss the complaint adopted the petition of appellant's counsel to remove the receiver. The contention that the trial court erred in appointing a receiver without notice to any of the

defendants is without merit, as the trust deed expressly provides that upon the filing of any bill for foreclosure, the court may immediately appoint a receiver without notice to any of the interested parties.

The claim that the order appointing the receiver should have been vacated because the plaintiffs' bond, made on the application for the appointment, runs to the People, instead of the adverse party, as required by the statute (Ill. Rev. Stat. 1943, ch. 22, par. 54 [Jones Ill. Stats. Ann. 106.19]), is equally untenable. The appointment of a receiver is not void even though no bond at all be filed without an order dispensing therewith as required by the same section of the statute. (*Walenti v. Krolik,* 234 Ill. App. 407.) If the bond was not sufficient an application should have been made to require the filing of a sufficient bond to correct the defect. (*Schmidt v. Johnson,* 166 Ill. App. 622, 623.) Furthermore, the want of a sufficient bond not having been raised in the trial court, cannot be urged here on appeal. (*Meyer v. Wiltshire,* 92 Ill. 395, 396.)

It is next claimed that the court erred in refusing to vacate the order upon proof of a bona fide sale of the premises to a bona fide purchaser for more than twice the amount due under the trust deed, within a few days prior to the filing of the complaint for foreclosure. The allegation in the verified complaint that the property is scant security for the debt, costs and expenses, raised a question of fact, and the court heard evidence on that question, and as to the impairment of the security and the danger of loss to the holder of the obligation.

Appellant introduced in evidence a contract dated September 22, 1944, for the sale of the premises to Russell H. McBride, a Chicago lawyer, "not personally but as Trustee under Trust agreement dated September 19, 1944," signed: "Allan Wood by Estelle B. Hunter, Atty. in Fact," and "Russell H. McBride,

not personally but as Trustee,'' for $40,000, with $2,000 down payment, $20,000 in instalments over a period of nine months, and a trust deed for the balance of $18,000, due on or before five years after its date. Proof of the down payment to Thomas F. Seay, a broker, by the purchaser was made, and an affidavit of the purchaser recites that he is ready, willing and able to carry out and perform all the terms of the contract. He did not testify on the hearing. The broker testified that he had one offer of $27,000, all cash, from a Gary, Indiana, broker, and another of $32,000, with a small down payment from another Chicago lawyer; that he ''judged the property is worth forty, forty-five or maybe fifty thousand dollars, if you got the right buyer.'' On cross-examination he said the property was rolling, all grown up in weeds, the greens were in bad shape, and it would cost from $300 to $350 each to reseed them; he also testified to the dilapidated condition of the buildings; that it would cost $15,000 to put the premises in shape; that they figured the property was no good for farm land, and its best use was for a golf course; and that the present owner plans a colored golf course, selling memberships to colored people in Chicago.

A disinterested witness who operates general machine rights and a real estate business in the vicinity of the premises in controversy, testified that the fair market value was $15,000; that he was familiar with the land; that the soil is the poorest in that territory, part wet and part dry, and the best use to which it could be put at present is to raise cattle; that the club house is an old barn, probably built 60 to 80 years ago and dilapidated; that nobody would tear it down for it, and $500 would be the most that could be gotten for it; that the women's quarters are in worse shape than the barn, and $2,000 would have to be spent on the house to get anyone to move there, and that it

would fall apart unless repaired; that he would say it was worth $2,000, and the other buildings are not worth fixing; that the property is five miles from a railroad station, and the club house is one half mile from a concrete highway. Another witness testified that he talked to Mr. Wood about repairing the buildings and that Mr. Wood said he was not going to spend a dime on it. The testimony also shows that the caddy buildings, the pump to furnish water to the greens, approximately 275 lockers, and the freezing unit had been sold and removed from the property.

It appears from the testimony that the property had been offered to a hunting club on a basis of $28,000, which they were trying to raise, but were very uncertain about; that Mr. Keller had put in $1,000, and there was talk of acquiring only the equity, but the negotiations fell through. It also appears that Mr. Keller talked with one of appellant's counsel in the presence of Mr. McBride, and knew of the $40,000 contract before he purchased the notes and trust deed, and that he started foreclosure within a few days after his purchase. He testified that he first learned that the property had been sold, from some negroes who stopped their car at his house to meet the neighbors. The record at this point indicates that Mr. McBride was one of the occupants of the car. Mr. Keller further testified that the purchaser attempted a scare by attempting to sell to negroes, and threatened to do so unless paid $13,000 for possession and the equity; and that later Ralph Weimer, the agent of the purchaser, told the witness that they had paid $2,000 down on the contract, and offered to sell for $15,000, or they would turn the property over to colored people. Mr. Keller's testimony is not contradicted.

There is no question but what the debt is in default as alleged in the complaint. The purchaser entered into the contract of purchase only as trustee, and his obligations are expressly limited to that ca-

pacity, and there is no testimony that tends to show that the parties whom he represents will be able to make any of the payments provided for therein, nor is there any testimony that shows that either of the other parties who Mr. Seay testified had made offers for the property was able to carry out such offers. The chancellor saw and heard the witnesses testify, and we cannot say that his conclusions as to the property being wasted and scant security for the debt and costs is against the weight of the evidence.

The next contention is that the court erred in refusing to vacate the order appointing the receiver because appellant is in the Maritime Service of the United States, and that all real estate taxes and insurance premiums were paid in full to the date of the filing of the foreclosure suit, and that the principal and interest of the mortgage debt were not in default when he entered the service. On December 20, 1944, appellant was present in court in person and it was stipulated that he is a lieutenant commander in the Maritime Service. The record shows that he has been in such service since on or about May 19, 1942.

The functions of the Maritime Commission were transferred to the Commandant of the United States Coast Guard by Executive Order No. 9083 of the President, effective March 1, 1942. (7 Fed. Reg. 1609). Section 511 of the Soldiers' and Sailors' Civil Relief Act (USCA title 50, § 511) extends its provisions to all members of the Army, the Navy, the Marine Corps, the Coast Guard, etc. Appellant relies upon this Executive Order, sec. 511, and subsec. (3) of sec. 532 of the Soldiers' and Sailors' Civil Relief Act, applying to mortgages, trust deeds, etc., as amended on October 6, 1942.

Subsec. (3) of sec. 532, as so amended, provides:

"No sale, foreclosure, or seizure of property for nonpayment of any sum due under any such obligation, or for any other breach of the terms thereof,

whether under a power of sale, under judgment entered upon warrant of attorney to confess judgment contained therein, or otherwise, shall be valid if made after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 and during the period of military service, or within three months thereafter, except pursuant to an agreement as provided in section 107 (section 107 of this appendix referring to agreements entered into after entry into the military service) unless upon an order previously granted by the court and a return thereto made and approved by the court.''

Subsec. (2) of the same sec. 532, as amended, provides that a proceeding in which a person in military service is involved, either as plaintiff or defendant, shall, on the application of such person or some person on his behalf, be stayed as provided in the Act, unless in the opinion of the court, the ability of the plaintiff to prosecute his action or the defendant to conduct his defense is not materially affected by his military service. Under the familiar well-established rule of statutory construction, the provisions of both subsec. (2) and (3) of sec. 532 must be construed together.

In *Cortland Sav. Bank v. Ivory,* 27 N. Y. S. (2d) 313, (1941), relied upon by appellees, a foreclosure was stayed on condition that the mortgagor, who had been called into service in the Navy, pay $26.95 monthly to cover taxes and interest on the unpaid balance of the mortgage.

In *O'Leary v. Horgan,* 39 N. Y. S. (2d) 555 (1943) also relied upon by appellees, the plaintiff consented to a stay on condition that he have leave to examine the wife of the service man defendant before trial but not oftener than once a year as to the financial ability of the defendants and details of the occupancy of the premises if not occupied by the defendant's family; that he might apply for leave to proceed on notice to the wife or her attorney if the defendants'

financial condition had improved sufficiently to make the monthly payments without hardship to the defendants; that plaintiff have leave to apply for a receiver if the premises became vacant; and that defendants be denied leave to answer after her time had expired. In approving the stay under these conditions the court said: ''This section does not contemplate complete immunity since the court is required to make such disposition 'as may be equitable to conserve the interest of all parties.' ''

In *Jamaica Sav. Bank v. Bryan,* 175 Misc. 978, 25 N. Y. S. (2d) 17, (1941) also relied upon by appellees, a stay was denied as to the husband of the owner of the premises in a mortgage foreclosure, where the husband, who was in the military service in the National Guard on a part time basis, was not liable on the mortgage bond, but was made a party because he was the husband of the owner and was an occupant of the premises. The court said in the opinion: ''It is difficult to see how the defendant's military service materially affects his ability to conduct his defense to the action. In fact, no evidence has been adduced to indicate that he has a defense to the action.''

In *Lightner* v. *Boone,* 222 N. C. 205, 22 S. E. (2d) 426, (Nov. 7, 1942) the plaintiff commenced an action against the defendant, who was in the military service, for an accounting of trust funds. Through his attorney he moved for a stay on the ground that he was in the military service. One continuance was granted to a fixed date, and on the latter date his attorney declined to appear further in the case. The court proceeded with the trial, which resulted in a verdict and judgment against the defendant. Although the attorney announced that he appeared for the sole purpose of moving for a continuance, the Supreme Court held that the appearance was general, and that there was no error in proceeding with the trial without appointing another attorney pursuant to sec. 200

of the Act. The judgment was affirmed by the Supreme Court, and it is said in the opinion: "He (the trial court) permitted the defendant to use the Act of Congress as a shield, and declined to permit him to use it as a sword. In this, we think the trial court pursued the intent of the statute."

In *The Sylph*, 42 F. Supp. 354 (Dist. Ct., East Dist. N. Y. 1941) the defendant was in the military service, and a decree of foreclosure and sale, where the defendant had permitted a default, and it appeared he had no defense, was stayed for 60 days, and it was ordered that the sale could then be made, provided the libelant stipulated to waive a personal judgment against the defendant.

In *Pope v. United States Fidelity & Guaranty Co.*, 67 Ga. App. 415, 20 S. E. (2d) 618, a judgment creditor levied on the debtor's life interest in real estate. The judgment debtor made application for a stay on the sole ground that he was a lieutenant colonel in the army, on active duty. He was receiving a substantial salary and subsistence, and the stay was denied on the ground that the record failed to show that his ability to comply with the judgment was materially affected by his military service.

The circumstance in the *Jamaica Sav. Bank* case, that no personal judgment could be entered against the service man, and in the case of *The Sylph* that none was to be entered against the defendant, is analogous to the situation here, where it is apparent that no deficiency judgment could be entered against appellant.

The quoted words in the *Jamaica Sav. Bank* case are appropriate here. Appellant was in court in person on December 20, 1944. The record shows that one of his present counsel procured an extension of one of the principal notes which was in default in May 1942, by appellant paying coupon note No. 7, and has represented him ever since in relation to the property

in controversy, and his activities demonstrate that he is able and resourceful. How Mr. Wood could have done any more, if he had not been in the Maritime Service, than his counsel has done, is not suggested, nor is it suggested how his military service or the receivership will in any way impair his ability to conduct his defense. On the contrary, the record shows that his ability to conduct his defense is not materially, nor in any appreciable degree, affected by his military service. Furthermore, under the doctrine of ejusdem generis, we think that the words "or otherwise" in subsec. (3) of sec. 532 relate only to a sale, foreclosure or seizure of the same class as "under a power of sale or under judgment entered upon warrant of attorney to confess judgment contained therein." This view is borne out by the fact that a sale or seizure under a power of sale or under a judgment by confession may deprive the defendant of his property so seized and sold without any notice to him or any opportunity to make a defense, and the manifest object of this subsection is to prevent such an occurrence, as demonstrated by the latter part of the same subsection. Under a receivership, the rents are merely sequestered in the custody of the court, awaiting the final determination of the suit, and if there is no deficiency when the property is sold, the rents are returned to the defendant, and if he has been wronged by the receivership, a proper bond of the plaintiff is a resource for recovery. We do not think that subsec. (3) of sec. 532 applies in this case, but that it is governed by the provisions of subsec. (2). It is also to be noticed that the order appointing the receiver was modified so as to permit the defendants and persons holding under them to make repairs and improvements without the attaching of any liens on account thereof. The order is affirmed.

*Order affirmed.*